UNITED STATES *v.* HACKETT and others.

(*Circuit Court, N. D. California.*  January 31, 1887.)

1. COURTS — OF UNITED STATES — DISTRICT OF CALIFORNIA — DIVISION OF DISTRICT — INDICTMENT.

Under act of congress of August 5, 1886, dividing California into two judicial districts, and providing, in section 11, that "all offenses heretofore committed in the district of California shall be prosecuted, tried, and determined in the same manner, and with the same effect, to all intents and purposes, as if this act had not been passed," the old district and circuit courts for the district of California are practically continued in existence for the purpose of prosecuting offenses antedating the passage of the act, and an indictment for such an offense found by a grand jury of the old district or circuit court, after the passage of the act, is properly found.

2. SAME — QUALIFICATION OF JURORS — APPLICATION OF STATE LAW.

In applying Code Civil Proc. Cal. § 198, establishing, as one of the qualifications of a juror, that he shall have been "assessed on the last assessment roll of the county, or city and county, on property belonging to him," to the United States courts, under the act of congress adopting as the qualification of jurors in the United States courts those prescribed by law in the courts of the state, it is sufficient that the juror pays taxes upon property assessed upon the assessment roll, although assessed in the name of another.

Motion to Quash Indictment, and Plea in Abatement.

The proceedings in this case were remitted from the district court to the circuit court for decision.   The motion to quash was upon the ground that the act of congress of August 5, 1886, dividing California into two judicial districts, abolished the old district of California, and as this indictment was found by a grand jury of the old district court, after the passage of the act redistricting the state, that it was not properly found. The plea in abatement was on the ground that two of the grand jurors who found the indictment did not possess one of the qualifications for jurors required by the statutes of California, viz., that they were not on the last assessment roll for any county in the district, and therefore the finding of an indictment by the grand jury was void.   The act of August 5, 1886, provides for the organization of the Northern and Southern districts, and section 11 of the act reads "that all offenses heretofore committed in the district of California shall be prosecuted, tried, and determined in the same manner, and with the same effect, to all intents and purposes, as if this act had not been passed."

The Code of Civil Procedure of California, § 198, reads as follows:

"A person is competent to act as a juror if he be (1) a citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year, and of the county, or city and county, ninety days, before being selected and returned; (2) in possession of his natural faculties, and of ordinary intelligence, and not decrepit; (3) possessed of sufficient knowledge of the English language; (4) assessed on the last assessment roll of the county, or city and county, on property belonging to him.

"Sec. 199. A person is not competent to act as a juror (1) who does not possess the qualifications prescribed by the preceding section; or (2) who has been convicted of malfeasance in office, or any felony or other high crime."

*John T. Carey*, U. S. Atty., for plaintiff.

*Wm. Hoff Cook*, for defendants.

HOFFMAN, J., (*orally.*) In regard to the question of the regularity of the proceedings in the case of *U. S.* v. *Hackett*, we have to accommodate ourselves to this change of district, and carry into effect the obvious provisions of the statute which was intended to secure that change of district, in criminal cases, and see that offenders shall not secure impunity by reason of the absence of any tribunal to try them. Inasmuch as every offender has a right to be tried by a jury of the district in which the crime was committed, which district shall previously have been ascertained by law, it is plain that a jury of the Northern district could not try an offender who has committed a crime while the district comprised the whole state, neither could a jury of the Southern district try him.

The matter has been more than once submitted to me, and I have gone over all the grounds and reasons which seem to render it necessary that the court should have a sort of dual aspect; that for the purposes of subsequent offenses,—that is, offenses subsequent to the passage of the act of August 5, 1886,—the court should be purely and simply a district court for the Northern district; but for the purposes of trying offenders who had been indicted, or whose offenses had been committed, before the passage of the act, it was necessary to keep alive the district court of the district of California, (the same observations apply to the circuit court,) in order that a court might be organized, and be in existence, competent to call a jury from the body of the district where the crime was committed. It is unnecessary to repeat the arguments. It appears sufficient to say that the act in terms provides that, for offenses committed before the passage of this act, all shall be prosecuted and tried in the same manner as if this act had not been passed; making the act, as we consider, non-existent for the purpose of trying those cases. It was obviously necessary to do this to effect the purpose, and the only question is, have they succeeded? Has congress carried out that plan? We are of the opinion that the language used is sufficient. Perhaps no more emphatic and comprehensive phraseology could have been used to carry out that object. They had it in their mind,—the danger of offenders in the category I have stated escaping punishment altogether,—and so they provided, in terms, that for such purposes it should be taken and considered that the act had not been passed. The result is that the district court for the district of California, and the circuit court for the district of California, may continue to sit, and summon jurors from the whole district, for the purpose of trying those offenders. We are therefore of opinion that the course adopted, though anomalous, and open to some inconvenience, is the only course to be adopted, unless we are willing to say that all indictments pending in either court, and all offenses committed before the passage of the act, must, the one be discontinued and fail for want of jurisdiction, and the other fail because the act secures the impunity of offenders. This should be avoided if possible, and we suppose it has been done.

With regard to the other question. The question raised is whether a juror, either petit or grand juror, having been challenged, must be excluded if it appear that his name is not upon the assessment roll of some county in the state. The general provision of the law, from the earliest organization of the government regulating the qualifications of jurors, adopts the qualifications and exemptions of jurors in the United States courts, such as are created by the state law regulating the impancling of juries in the highest judicial tribunals of the state. The question is whether, under that statute, it is a necessary qualification of every juror. If the grand jury be impancled before the person has been held to answer, he might avail himself of the right, if they find an indictment, by a plea in abatement, or a motion to quash; and if it is indispensable, all indictments must fail, provided a motion to quash be made, and advantage be taken of this defect in the proper way. The law seems to be a tradition of the common law, founded upon what sense or reason I am unable now to imagine. I think an investigation of it would disclose some reason which is not very apparent; but it appears that, if one disqualified juror be included in the jury, the indictment fails, for the jury, by reason of 'that defect, is no jury; and though, as in this case, nineteen persons were present, and voted unanimously for an indictment, while only sixteen is necessary to constitute a quorum, and twelve to find a bill, yet, if two, or even one, juror is found to be disqualified, when it is obvious that his disqualification or participation in the vote would not have affected the result, nevertheless the indictment fails, because the jury that finds it is no jury, and the indictment is no indictment. That view of the common law seems to have been adopted by many authorities in the states, and in the federal courts by Mr. Justice Woods in the cases that have been cited.

The phraseology of the California statute establishing the qualifications is certainly very clumsily drawn, so far as it intended to effect the substantial object. No doubt the general idea was to secure that juries should be composed of substantial, tax-paying citizens, who had some stake in the community, some interest in the state, and who, from the possession of property, might be deemed sensible of their responsibilities, and qualified to discharge the duty imposed upon them. It requires, however, that the juror should be assessed on the assessment roll of the county from which he is called, for property belonging to him. I am not aware that any very distinct decisions of the supreme court of this state upon the construction of that requirement has been enunciated. It would seem, however, from the phrase, "he must be on the assessment roll," that he can be on it in only one sense, and that is by name; so that his name must be on it, and he be assessed for property belonging to him. Of course, it must be his own property; otherwise he has not the qualification of a tax-payer; so that an executor or guardian, or a trustee without interest, would not fulfill the requirement nor answer the object of the law. But if his name is required to be on the roll, it opens the door to many evasions of jury duty, and really frustrates to a great extent the object of the act. For example, if two persons, having confi-

dence in each other, should say, "I will transfer my property to you, nominally, and you to me," and let each be assessed for the property standing in his name, he could with truth say that he is a tax-payer, because he pays his taxes, but his property would not be in his name.    It would be in the name of his friend, and, *vice versa*, the friend's property would be in his name, and thus they would both escape.    So, too, many persons with large fortunes may not have any property except property in stocks; and a man owning a large mass of stock,—gas or water stock, or mining stock,—of great value, might be, in effect, a millionaire, and yet, inasmuch as all his property is in the name of the company, his name would not be on the assessment roll, and he would escape.    So, a man may be a member of a firm, owning a large amount of property, real and personal, but standing in the firm name, and yet, though he be the principal partner, his name might not appear upon the roll, but only the name of the association or joint-stock company.    He would be a tax-payer, having all the substantial qualifications of a juror, and yet he might be challenged because his name was not on the assessment roll; the party assessed being in the one case a corporation, and in the other case a firm.    It is obvious that to adhere to a literal construction of the act, if that be the true construction, would in many cases defeat its obvious and rational purpose.

It is believed that, when congress required that jurors should have certain qualifications, they meant that they should substantially possess them.    The object the act sought to attain should be attained by the adoption of such rules, and such interpretation of that statute, as will attain that object, and not a technical and literal construction, which will, in a great measure, defeat it.    It is impossible for us literally to follow the statute, for the statute, as construed according to its terms, requires that every juror qualified to serve as a grand or petit juror should be assessed, on the assessment roll of the county from which he is summoned, for property belonging to him.    As was admitted at the bar, and as I suppose to be the fact, he may own property in every other county in the state, to any amount, but, if he owns none in the county from which he is summoned to serve as a juror, he is disqualified.    Of course, assuming this to be the interpretation of the statute, it would exclude the juror from serving in a court that draws its jury from the body of the district, which until recently included the whole state, and now includes a very large number of counties; and we have therefore been obliged to deviate from the literal terms of the statute from very necessity, and we have held heretofore that it was sufficient if the juror to be drawn appeared on the assessment roll of any county in the state, or in the district, for property belonging to him.    It seems not a very much greater departure, to avoid the evils, anomalies, and incongruities which result from a literal adoption of the rule, to say, further, that the act of congress was intended to secure that a person should be a tax-payer for property owned by him, and that it will be sufficient if it appear that he does pay taxes, notwithstanding that his property may be in the name of another person, or in the shape of interests in a corporation or

a firm, which corporation or firm duly appears on the assessment roll.

In the case submitted to us, and from the facts as developed by an examination of the juror, it appeared that by accident, or by reason of intended absence, the juror asked his brother to hand in his statement, and his brother's name appears on the assessment roll, but it is for property long since owned by the juror, and upon which he pays taxes, his brother merely appearing as his nominal representative.   So, in the other case, where the juror was about to be absent, and could not hand in his statement, his wife did it, and the property was assessed to her.   We have therefore thought that, as we have held that it is impossible to construe the requirement of the statute literally we must adapt it to the circumstances of the case, and the circumstances of the district and circuit courts for this district; endeavoring to satisfy the requirement of the law, and pursue it substantially, to attain its great end, and to give it its practical force, by holding that it is sufficient if it appear that the juror is a tax-payer, a substantial citizen, who contributes to the support of the state,—who has a stake and an interest in its welfare that would presumably give him the qualifications necessary to discharge so high a function as that of a juror.

The view is somewhat confirmed by the idea that the state law itself does. not seem to consider that, in the case of grand jurors, the qualification must necessarily exist, or its absence be made the ground of objection; for, enumerating the challenges to grand jurors, it mentions a number,—seven, I think,—and provides that these shall be the only grounds of challenge, and among those the challenge for the reason that the juror's name is not upon the assessment roll is not mentioned.   The legislature, therefore, have refused to extend the general terms· to the case of grand jurors,—the case immediately in hand,—for it absolutely excludes that disqualification as a ground for challenge.   It does retain it in the case of petit jurors, and there would be no very great inconvenience if we were to adopt it there, because the prisoner is always present, and, if he does not then make the objection, it is deemed to be waived; but with regard to grand jurors the case is different, because the grand jury often finds bills against people who are not arrested, and may not be even suspected, and certainly not held to answer, at the time the grand jury is impaneled; and to allow them, when they have been arrested and held to answer, to bring the grand jury into court, and subject· them to an examination as to their qualification, is very inconvenient, and, as I believe, in the state courts, is fertile in those delays which have brought scandal upon the administration of justice.   Judge SABIN and myself were of opinion—I have not had an opportunity to confer with the circuit judge—that as the act provides that the jurors in the United States courts shall have the same qualifications as those established by law in the state courts, that, if a person is a tax-payer, and possesses the qualifications of being a contributor to the support of the state, and a substantial citizen, owning property, which property is assessed upon the assessment roll, we may dispense with a literal compliance with the law that his name should appear upon the assessment roll.   I think it would

be sufficient if it appears that he is so assessed; and it appears that he is so assessed, and so pays his assessment, upon property assessed practically against him, but appearing on the assessment roll in the name of a corporation, or a firm, or any other person who may hold the title nominally, and whose name is alone found on the assessment roll.

The plea in the abatement is overruled, and the motion to quash denied.

SABIN, J., concurring.

SAWYER, J. I fully concur in the opinion delivered by my associate.